## MONROE COUNTY CLERK'S OFFICE

**THIS IS NOT A BILL. THIS IS YOUR RECEIPT.**

Receipt # 2451034

Book   Page   CIVIL

Return To:
EDWARD ARVIN TREVVETT

No. Pages: 32

Instrument: EXHIBIT(S)

Control #:        202007310529
Index #:          E2020001926

Date: 07/31/2020

Town of Alma

Time: 1:21:09 PM

The International Association of Machinist and Aerospace
Workers Local 1580

Total Fees Paid:                    $0.00

Employee:

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

# EXHIBIT B

## Angela Clarke

| | |
|---|---|
| **From:** | Edward A. Trevvett |
| **Sent:** | Thursday, July 2, 2020 1:50 PM |
| **To:** | WhitneyRI@alleganyco.com |
| **Cc:** | KnappCM@alleganyco.com; ronald staedt; Edward A. Trevvett; David Brautigam |
| **Subject:** | Town of Alma |
| **Attachments:** | 2020-02-01 Opinion and Award (Trask) (4822-4756-1395 1).pdf; E2020001926 _Town_of_Alma_v_Town_of_Alma_DECISION__ORDER_ON_24 (1) (4811-3089-3249 1).pdf; 2020-07-01 Letter to Sheriff Whitney (4850-7779-2449 1).docx |

| | |
|---|---|
| **Importance:** | High |

| **Tracking:** | **Recipient** | **Delivery** |
|---|---|---|
| | WhitneyRI@alleganyco.com | |
| | KnappCM@alleganyco.com | |
| | ronald staedt | |
| | Edward A. Trevvett | Delivered: 7/2/2020 1:50 PM |
| | David Brautigam | |

Sheriff Whitney,

I am one of the attorneys representing the Town of Alma. Attached is my letter requesting that you assist the Town with a trespass matter. On behalf of the Town we look forward to your assistance in this matter.

**Edward A. Trevvett**
**Partner**

## HARRIS BEACH PLLC

ATTORNEYS AT LAW
99 Garnsey Road
Pittsford, NY 14534
585.419.8643   Direct
585.419.8801   Fax
585.419.8800   Main

Buffalo Office
726 Exchange Street, Suite 1000
Buffalo, NY 14210
716.200.5050   Main
716.200.5090   Fax

Uniondale Office
333 Earle Ovington Blvd, Suite 901
Uniondale, NY 11553
516.880.8484   Main
516.880.8483   Fax
Website | Bio | Add to Contacts
NYMUNIBLOG

**p r a c t i c e** G R E E N
Save a tree. Read, don't print, emails.

**HARRIS BEACH** PLLC

ATTORNEYS AT LAW

99 GARNSEY ROAD
PITTSFORD, NY 14534
(585) 419-8800

**EDWARD A. TREVVETT**

DIRECT:   (585) 419-8643
FAX:      (585) 419-8817
ETREVVETT@HARRISBEACH.COM

July 2, 2020

Via Email (WhitneyRl@alleganyco.com)

Sheriff Ricky L. Whitney
4884 State Route 19S
Belmont, New York 14813-9506

**RE:   Town of Alma**

Sheriff Whitney:

I represent the Town of Alma with respect to matters concerning Brian Trask. The Alma Town Board terminated Mr. Trask's employment during his probationary period on January 25, 2019. After that date the Town Supervisor informed both Mr. Trask and Town Highway Superintendent Dan Ford that Mr. Trask was not a Town employee and that he was not to be on Town property or do any work for the Town. Mr. Trask was informed that if he continued to come onto Town property he would be considered a trespasser. Mr. Trask and Mr. Ford both refused to recognize that Mr. Trask was terminated and Mr. Ford continued to permit Mr. Trask to work for him at the Town's Highway Department.

A union representing Mr. Trask filed a grievance. Arbitrator Jeffrey Selchick, Esq. rendered an Opinion and Award denying the Trask termination grievance (a copy of which is attached for your reference). On pages 19-20 of his Award, Arbitrator Selchick specifically held that per the collective bargaining agreement the Town Board had the sole authority to terminate Mr. Trask during his probationary period, and that Town Highway Superintendent Dan Ford had no authority to prevent the Town from terminating Mr. Trask during his probationary period. Subsequent to that Award the Town Supervisor asked your department to have Mr. Trask removed from Town property as a trespasser. You refused to do so, stating that you could only act if Arbitrator Selchick's Award was confirmed by a court. While the Town disagreed with your position that the Award was not enforceable, it nevertheless filed a petition in court to confirm Arbitrator Selchick's Award as you insisted must be done.

On June 30, 2020, Monroe County Supreme Court Justice Ann Marie Taddeo confirmed Arbitrator Selchick's Arbitration Award. The Town Supervisor met with you on July 1, 2020, and provided you with a copy of Justice Taddeo's Decision and Order confirming Arbitrator Selchick's Award (also attached for your reference). Judge Taddeo's Decision and Order was entered and served on Mr. Trask's attorney on July 1, 2020 as well.

There seems to be some confusion as to what Town Supervisor Staedt was asking you to do. You indicated to the Town Supervisor that he needed to provide you with 3 original copies with a seal and a check for $38. The Court's Order is not an execution document that you are being asked to serve or enforce. Rather, as stated above, Judge Taddeo's Order confirms Arbitrator Selchick's Arbitration Award stating in part that the Town lawfully terminated Mr.

Sheriff Ricky L. Whitney
July 2, 2020
Page 2

**HARRIS BEACH** PLLC
ATTORNEYS AT LAW

Trask on January 25, 2019.   At this point there can be no argument that Mr. Trask is not trespassing when he continues to come to work for Mr. Ford at the Towns Highway Department. As Judge Taddeo observed in her Order, the Town is mindful of the possible liability from Mr. Trask's continued disregard of the Arbitrator's Award.

**On behalf of the Town of Alma I request that you forthwith take whatever steps are necessary to have Mr. Trask removed from Town property as a trespasser and prevent him from coming onto Town property to perform any work for Mr. Ford in the Highway Department or operate any Town machinery or vehicles.**

Lastly, and with all due respect, I need to notify you on behalf of the Town that I am also placing you, your department, and the Allegany County on notice that if you do not take immediate steps to see to it that Mr. Trask ceases trespassing on Town property, the Town will hold you jointly and severally liable in the event that Mr. Trask does anything while continuing to work for Mr. Ford in the Town's Highway Department that would cause the Town to be sued.

Very truly yours,

HARRIS BEACH PLLC

s/Edward A. Trevvett

Cc: County Administrator Carissa M. Knapp
        (KnappCM@alleganyco.com)
      Ron Staedt, Town Supervisor
      David Brautigam, Town Attorney


Case 1:20-cv-06111-LJ... Document 1-7 Filed 08/10/20 Page 6 of 32

FILED: MONROE COUNTY CLERK 07/01/2020 08:44 AM

MONROE COUNTY CLERK'S OFFICE                    THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 2425979

Book   Page   CIVIL

Return To:                                     No. Pages: 4
Donald Scardino
99 Exchange Blvd                               Instrument: ORDER
Rochester, NY 14614

Control #:        202007010116
Index #:          E2020001926

Date: 07/01/2020

Town of Alma                                   Time: 8:43:42 AM


The International Association of Machinist and Aerospace
Workers Local 1580


Total Fees Paid:                    $0.00

Employee: CW


State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK

FILED: MONROE COUNTY CLERK 07/31/2020 01:16 PM INDEX NO. E2020001926
NYSCEF DOC. NO. 24
FILED: MONROE COUNTY CLERK 07/01/2020 08:44 AM
Case 1:20-cv-01111-LJV Document 1-7 Filed 08/19/20 Page 7 of 32 INDEX NO. E2020001926
NYSCEF DOC. NO. 24 RECEIVED NYSCEF: 06/30/2020
RECEIVED NYSCEF: 06/30/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE

---

TOWN OF ALMA

               Petitioner             Index No   E2020001926
                                       DECISION AND ORDER

v

THE INTERNATIONAL ASSOCIATION OF
MACHINIST and AEROSPACE WORKERS
LOCAL 1580

               Respondent.

---

Hon. Ann Marie Taddeo, JSC.


     Upon a Petition to Confirm Arbitration, an Affirmation in Support by Edward A. Trevvett, Esq., a Memorandum of Law in Support by Mr. Trevvett; and upon Defendants' Motion to Dismiss, an Affirmation in Support of the Motion by Michael T. Harren, Esq., A Memorandum of Law in Support of the Motion by Mr. Harren; and upon an Affirmation in Opposition to the Motion by Mr. Trevvett, an Affidavit in Opposition to the Motion by Ronald. R. Staedt, a Memorandum of Law in Opposition to the Motion by Mr. Trevvett; and upon consideration to all exhibits attached to Counsels' papers and oral argument having been conducted by telephone, the Court renders the following Decision:

     On December 7, 2018, Brian Trask was hired by Petitioner Town of Alma (Town) as a Heavy Equipment Operator. On January 25, 2019, Town, citing Mr. Trask's "incidents" involving the Town's truck, terminated Mr. Trask's employment. Mr. Trask informed the Town Board that as he believed he was entitled to a hearing before his removal, he did not accept their letter of termination. Despite receipt of his letter of termination, Mr. Trask continued to report to work with the approval of the Highway Superintendent. On January 29, 2019, the Town Supervisor wrote Mr. Trash repeating that not only was he no longer an employee, but that if he continued to operate Town equipment or vehicles, the police would be notified. On February 18, 2019, the Town Supervisor reiterated to Mr. Trask that he was no longer an employee and added that his old position had been eliminated as of February 4, 2019.

     On March 29, 2019, Respondent-International Association of Machinist and Aerospace Workers Local 1580 (Union), filed a grievance on Mr. Trask's behalf. The Court notes that the effective agreement between the Town and Union was entered into in 2017 and was in effect at the time Mr. Trask was both hired and fired.

     An arbitration was conducted before Arbitrator Jeffery M. Selchick. Both parties

appeared with counsel and participated fully. On February 1, 2020, the Arbitrator upheld Mr. Trask's dismissal, ruling that "the January 25, 2019 notice to [Mr. Trask] informing him that his employment had been terminated under Section 7.01, of the parties' Agreement resulted in a termination that took place within the 60 calendar day probationary period and is conduct on the part of the Town that the parties have excluded from the grievance process and arbitral consideration."

Following this ruling, Mr. Trask continued to show up for work. Notwithstanding the Arbitrator's decision, the Town's Sheriff declined to remove Mr. Trask, stating that such enforcement would require a Court order. The Town, mindful of possible liability from Mr. Trask's continued disregard of the Arbitrator's Opinion and Award, filed the instant proceeding pursuant to Article 75 seeking Court confirmation of the Opinion and Award.

Respondent Union challenges the jurisdiction and standing of the Town to bring this Article 75 petition before this Court. The Court disagrees. Under the specific terms of the contract between the parties, grievances brought on behalf of a union member are heard through the arbitration process, as was done in this instance. The award, as Petitioner points out, is not "self enforcing"; the failure of a party to comply with the award requires that it must be imposed through the judicial system, as has happened here (CPLR 7510). Thus, this Article 75 is not the beginning, but rather the lawful and necessary final step of the agreed upon process. It is entirely appropriate and required no further authorization from any other entity.

The Court also rejects Respondent's argument that the Town Supervisor is not authorized to bring a "special proceeding" in accordance with New York Town Law. The public interest factors presented by the facts of this case clearly give him the authority to pursue the enforcement of the Award by filing this Article 75 proceeding.

Moreover, the Court agrees with Petitioner's assertion that by requesting relief in the form of seeking dismissal of the Arbitrator's award, the Respondent has placed the issue of confirmation directly before this Court, thus waiving any jurisdictional claim. *See, Vilceus v. North River Insurance Company,* 150 AD2d 729 (2nd Dept. 1989).

Lastly, Respondent argues, citing CPLR §7511 (b)(1)(iii), that the Arbitrator's Award should be vacated because as it did not address the substantive merits of Mr. Trask's claim and thus the Arbitrator "exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made..." The Court rejects Respondent's application of §7511(b)(1)(iii) and agrees with Arbitrator Shelchick that due to Mr. Trask's probationary status, the matter lacks "substantive arbitrability." The Agreement between the Union and the Town makes clear that arbitration is not an available remedy to an employee terminated during his period of probation. As Mr. Trask was hired on December 7, 2018 and fired on January 25, 2019, he was employed less than 60 days. Accordingly, Mr. Trask was not, under the terms of the Agreement, entitled to arbitration. Since both parties were bound by the provisions of the Agreement, the Arbitrator's decision

was correct in ruling that he was barred from reaching the merits of the dispute.

Finally, the Court notes that, notwithstanding the lack of timeliness which prohibited the Arbitrator from reaching the merits or Mr. Trask's case, the grievance was parties agree that a grievance "will be deemed waived unless it is filed within seven (7) calendar days after the employee knew or should have known of the act or condition on which the grievance is based." Mr. Trask's employment was terminated by letter on January 29, 2019. The grievance was not submitted to the Highway Superintendent until March 29, 2019, well beyond the seven-calendar day period.

Accordingly, it is

ORDERED, that the Arbitration Opinion and Award is confirmed; it is further

ORDERED, that Respondent's Motion to Dismiss the Petition is denied.

Dated: June 30, 2020
Rochester, New York

Hon. Ann Marie Taddeo, JSC

STATE OF NEW YORK
CONTRACT GRIEVANCE ARBITRATION

In the Matter of the Arbitration between

INTERNATIONAL ASSOCIATION OF MACHINISTS          **OPINION**
AND AEROSPACE WORKERS, LOCAL LODGE 1580,
                                          Union,      **AND**

                      and                            **AWARD**

TOWN OF ALMA, NY,
                                 Employer.

Grievance:  Brian Trask

BEFORE:    Jeffrey M. Selchick, Esq.
                  Arbitrator

APPEARANCES:

                  International Association of Machinist
                  And Aerospace Workers, Local Lodge 1580
                  Trevett Cristo
                  Michael T. Harren, Esq. of Counsel

                  Town of Alma
                  Harris Beach, PLLC
                  Edward A. Trevvett, Esq., of Counsel

     In accordance with Article 10 ("Grievance Procedure") of the Agreement

(hereinafter "Agreement") (Joint Exhibit 1) of the parties (hereinafter "Union" and

"Town"), the undersigned was designated Arbitrator.   A hearing was held on

November 26, 2019 in Pittsford, New York, at which time Grievant appeared and

was represented by Counsel and other representatives.

FILED: MONROE COUNTY CLERK 07/31/2020 01:16 PM                    INDEX NO. E2020001926
NYSCEF DOC. NO. 29          Case 1:20-cv-01111-UNA   Document 1-7   Filed 08/19/20   Page 11 of 32    RECEIVED NYSCEF: 07/31/2020

2

The parties were accorded a full and fair hearing including the opportunity to present evidence, examine witnesses, and make arguments in support of their respective positions. The parties filed post-hearing briefs, and the record was closed upon their receipt on or about December 23, 2019.

## ISSUES

The parties were unable to agree and stipulate to the issues to be presented for decision. The Union's proposed issues are:

1.  Did Brian Trask successfully complete his probationary service? If so, what shall be the remedy?

2.  Is Brian Trask entitled to compensation for all hours of work for the Highway Department as certified by the Superintendent of Highways? If so, what shall be the remedy?

3.  Has Brian Trask been locked-out of his job in violation of the collective bargaining agreement? If so, what shall be the remedy?

The Town's proposed issues are:

1.  Should the Grievance be dismissed because it was not timely filed per Section 10.08 of the CBA?

2.  Should the Grievance be dismissed because the Grievant was discharged during his probationary period and such dismissals are not grievable per Section 7.01 of the CBA?

3.  Should the Arbitrator find that the Grievance must be denied because the Grievant was never validly hired as an employee by the Highway Superintendent due to the fact that the Highway Superintendent lost his position by operation of law prior to December 2018 when he purportedly hired the Grievant?

4.    If the matter is found to be grievable, did the Town Board have just cause to terminate the Grievant's employment? If not, what shall the remedy be?

5.    If the Grievant's termination is not upheld are his back pay damages limited by the fact that his HMEO position was eliminated by the Town on February 5, 2019?

The Arbitrator recognizes the relevance of the Town's contentions that there are threshold issues regarding arbitrability. Accordingly, he finds the following to be a fair and accurate statement of the issues to be decided:

1.    Should the grievance be dismissed on the ground that it is not substantively arbitrable?

2.    Should the grievance be dismissed on the ground that it was not timely filed under the provisions of the parties' Agreement?

3.    If the grievance is arbitrable, did the Town violate Grievant's rights under the parties' Agreement when it considered Grievant terminated and did not compensate him for working in the HMEO position?

4.    If the grievance is arbitrable and the Arbitrator finds that Grievant's rights under the parties' Agreement were violated, what is an appropriate remedy?

5.    If Grievant is entitled to back pay damages, should said damages be limited by the fact that the Town eliminated the HMEO position on February 5, 2019?

**CONTRACT PROVISIONS**

The Preamble of the parties' 2017-2022 Agreement reads in pertinent part:

This Agreement is made and entered into by and between the Town of Alma, herein referred to as the (Employer); and Local Lodge No 1580 and District Lodge No. 65, International Association of Machinist and Aerospace Workers, AFL-CIO, herein referred to as the (Union) ... (Joint Exhibit 1, 4).

Article 7 ("Seniority") of the parties' 2017-2022 Agreement reads in pertinent part:

> 7.01 Employees in the unit covered by this Agreement shall be considered probationary during the first sixty (60) calendar days of employment. At any time during such probationary period, such employees may be dismissed or otherwise terminated by the Employer, which dismissal shall not be subject to the grievance and arbitration provisions of this Agreement. (Id., 6).

Article 9 ("Probation Period") of the parties' 2017-2022 Agreement reads:

> 9.01 All new employees shall be subject to a maximum probationary period of sixty (60) calendar days. At the end of this period the employee shall either be terminated or become a permanent employee. A permanent employee shall be placed in the regular seniority list effective as of his date of hire. The probationary period may be extended by mutual agreement between the Superintendent of Highways and the Union. (Id., 8).

Article 10 ("Grievance Procedure") of the parties' 2017-2022 Agreement reads in

pertinent part:

> 10.1 The Employer and the Union recognize the importance of an orderly, clearly definitive procedure for processing alleged grievances for the employees included in the unit covered by this Agreement. The primary intention of this procedure is to resolve any alleged grievance at the lowest possible level.
> …

> 10.8 No grievance will be entertained, and such grievance will be deemed waived unless it is filed within seven (7) calendar days after the employee knew or should have known of the act or condition on which the grievance is based.
> …

> 10.11 The arbitrator shall have no power of authority to add to, detract from or modify explicitly or impliedly, any express terms of this Agreement, and his authority shall be limited to deciding only whether a specific provision of this Agreement has been violated. Cost for the arbitrator services and his expenses, if any, will be shared equally by the Employer and the Union. (Id., 8-10).

## BACKGROUND FACTS

Grievant was hired by the Town on December 7, 2018 as a Heavy Motor Equipment Operator ("HMEO"). Both parties agree that his employment was subject to a 60-day probationary period. At its January 15, 2019 meeting, according to the minutes, the Town Board noted that the HMEO position, identified as "3rd Full-Time Position," became a topic of Board discussion with the thought of "pulling" the position "because of the financial crunch that will be felt by the Town of Alma by Governor Cuomo and the future towns funding." (Town Exhibit 4).

On January 25, 2019, the Town Supervisor informed Grievant as follows:

This is to inform you that, per Section 7.01 of the CBA, your employment with the Town is terminated effective immediately. You are being terminated because of incidents you have gotten into with the Town truck on January 8, 2019 and January 23, 2019. Per the CBA your dismissal is not subject to grievance procedure. (Joint Exhibit 5).

Grievant then authored the following January 29, 2019 letter to the Town Board:

Per Article 7 section 7.01 of the CBA, employees may be dismissed or otherwise terminated by the employer, in this case it would have to be done by the Alma Highway Superintendent Dan Ford.

Per Article 9 section 9.01 of the CBA, all employees shall be subject to a maximum probationary period of 60 calendar days. At the END of this period the employee shall either be terminated or become a permanent employee.

Per Section 75 1-b of the Civil Service Law, I am subjected to have a hearing before any removal or otherwise subjected to any disciplinary penalty.

Therefore, I Brian Trask DO NOT accept your letter of termination dated January 25, 2019. (Joint Exhibit 6).

On January 29, 2019, the Town Supervisor authored a letter, entitled "Personnel Action," to Grievant, with copies to the Business Agent of Local 158 and the Town's Highway Supervisor. This letter read:

> The purpose of this letter is to notify you that effective January 25, 2019 you have been terminated from your position with the town of Alma and are no longer an employee. Should you continue to operate any town equipment or vehicles or present yourself at the highway depart building we will have no other recourse than to notify law enforcement of your activities. (Joint Exhibit 7).

At its February 5, 2019 meeting, according to the minutes, the Town Board received "Highway and Building Committee Reports" submitted by the Highway Superintendent which contained the following:

> As of Feb. 4th, 2019, Brian Trask has successfully completed his 60 day probation period and is now a full time employee of the Town of Alma Highway Department. (Joint Exhibit 5).

A February 18, 2019 memo to Grievant from the Town Supervisor, which copied the Highway Superintendent, notified Grievant that his position had been eliminated and reminded him that his employment was terminated as of January 25, 2019. (Town Exhibit 9). The memo also acknowledged that it had come to the Town Board's attention that the Highway Superintendent had been allowing Grievant to work after that date, which was described as "illegally allowing" in the letter because the "Highway Superintendent's authority to hire and fire employees only extends to positions that the Town Board had approved." (Id.). The letter also stated that "the Highway Superintendent has no legal authority to

continue your employment, and therefore the Town has no legal obligation to pay you after your job was eliminated." (Id.). Grievant was also notified he would "not be paid for any time after January 25, 2019, since you are not a Town employee as of that date." (Id.).

On March 22, 2019, the Town Supervisor forwarded a letter to the Superintendent of Highways in the Town, as follows:

> On February 4, 2019, the Town Board eliminated one of the positions in the Highway Department. In spite of this, we understand you are permitting Brian Trask, who was a probationary employee as of the date the position was eliminated, to be on Town property and operate Town highway equipment. This is illegal, and could subject the Town to serious liability. Until further notice, you are not authorized to allow Mr. Trask access to the Town Highway barn or any Town equipment. You will be personally liable if you disregard your legal responsibilities as stated in this notice. (Joint Exhibit 8).

On April 16, 2019, the Town Supervisor notified Grievant in a hand delivered letter, as follows:

> As you know since you were at the Board meeting where it was done, your position was eliminated and your employment ended effective January 25, 2019. The Town's Highway Superintendent has been illegally allowing you to work after that date. As of now that ends.

> You are to turn in all of your keys and other Town property to the Town Supervisor's office immediately. With the sole exception of attendance at a Town Board meeting you are not to be on Town property at any time. If you need to be on Town property for any business reason you must first notify the Town Supervisor in advance. Failure to do so will result in the Town contacting the police authorities. (Joint Exhibit 9).

On March 29, 2019, Union Representative Dean Clayson, filed a grievance on behalf of Grievant, alleging that Grievant had been terminated in violation of the parties' Agreement. (Joint Exhibit 2). The "Foreman's Statement" on the grievance was signed by the Highway Superintendent who stated he "never relieved" Grievant "from his duties" as a Town employee. (Id.). His opinion is offered that Grievant was "unfairly discharged by the Town of Alma Town Board." (Id.).

By letter dated April 28, 2019, the Town Supervisor notified the Union's Directing Business Representative, Ronald J. Warner that the "grievance is untimely and therefore has no merit." (Joint Exhibit 3). In a June 9, 2019 letter to the Town Supervisor, Union Representative Warner reported on the mediation of various grievances before FMCS and that, as to the instant grievance, that the "Town refused to mediate this grievance, nor discuss this grievance at all." (Joint Exhibit 4). The grievance was then submitted to arbitration by the Union, resulting in the instant proceeding before this Arbitrator.

## POSITION OF THE TOWN

The Town asserts that the grievance should be dismissed on the ground it was untimely filed. It identifies the language in Section 10.08 of the parties' Agreement that requires that the filing of a grievance "within seven (7) calendar days after the employee knew or should have known of the act or condition on which the grievance is based." The Town observes that its termination of

Grievant was by letter dated January 25, 2019, and that by at least January 29, 2019, Grievant "unquestionably knew" of the termination "because that is the date of the letter he gave the Town Board on February 5, 2019" in which he identified the January 25, 2019 termination letter. Nevertheless, the Town observes, the grievance was not filed until March 29, 2019, well after the seven-day period.

The Town observes the Union may claim that the time for filing the grievance did not start when Grievant acknowledged receiving the January 25, 2019 letter because the grievance was filled out by Union Steward Clayson. According to the Town, the language of Section 10.08 "measures the time for filing a grievance *only* by when 'the employee knew of should have known of the act or condition on which the grievance is based'." (Emphasis in original). It was Grievant's knowledge, therefore, the Town argues, not Clayson's knowledge, which is relevant. In any event, the Town argues, the Town Board meetings reflect that Clayson was in attendance at the February 5, 2019 Board meeting at which Grievant handed the Board his letter of February 5, 2019 rejecting the termination letter of January 25, 2019. Accordingly, the Town puts forth, Union Steward Clayson knew by February 5, 2019 of Grievant's termination, which would also render the filing of the grievance untimely.

Finally, the Town asserts that, if one measures the seven day filing period from when the Union Business Agent Warner knew of Grievant's termination, and putting aside the fact that it is the "employee's" knowledge that counts, "Warner

never denied receiving Supervisor Staedt's January 29, 2019 letter to the Grievant, on which he was copied in, again advising the Grievant of his termination effective January 25, 2019."

The Town also asks that the grievance be dismissed because the Town discharged the Grievant during his probationary period under Section 7.01 of the Agreement "and the matter is therefore not grievable per the terms of Section 7.01." Section 7.01, the Town notes, establishes a 60-calendar day probationary period for new employees during which a probationary employee can be dismissed "at any time … by the Employer." "Employer," the Town notes, is defined in the Preamble to the parties' Agreement as "the Town of Alma." The Highway Superintendent, the Town stresses, is not a party to the Agreement and cannot be considered the "Employer." The Highway Superintendent, the Town adds, "is nonetheless legally bound [by] its terms, including … the provision permitting the Town to terminate the Grievant in this case during his probationary period." The Town cites two opinions of the State Comptroller as support for this proposition.

As to any claim by the Union that the Highway Superintendent had the power under the State Highway Law to terminate Highway Department employees, the Town responds by stating that any such "argument is contrary to the express language of the CBA, giving the 'Employer' … the power to terminate employees during their probationary period." The Town also labels any argument by the Union in this regard as "irrational."

In any event, the Town asserts, the Comptroller's Opinions upon which it relies "recognize that [the] Highway Superintendent's powers under the Highway Law can be lawfully superseded by a collectively bargained agreement, and that where a CBA alters those powers, the language in the CBA controls."

As to any assertion by the Union resting on the language of Section 9.01 of Agreement that states that a probationary period "may be extended by mutual agreement between the Superintendent of Highways and the Union," the Town responds that the language cannot rationally be construed that the Town lacks the power to terminate an employee during the 60-day probationary period. As the Town reads the parties' Agreement, Section 9.01 and Section 7.01 (creation of a 60-calendar day probationary period) can be harmonized. Thus, the Town claims that Section 7.01 gives it "the unfettered right to terminate an employee *during* the 60-day probationary period, while Section 9.01 provides the Highway Superintendent, who supervises probationary employees on a daily basis, the power to extend ... the probation of an employee whose performance does not obviously warrant either termination or continuation of a permanent employee, beyond the 60-day period set forth in Section 7.01." (Emphasis in original). Section 9.01, the Town claims, therefore "does not supplant Section 7.01; it supplements Section 7.01."

The Town also claims that the Union did not establish the Town Supervisor acted with any improper motive when Grievant was dismissed during his probationary period and his position of HMEO eliminated. As to any reliance by

12

the Union on a text message that former Town Board Member Shields testified he received from Town Supervisor Staedt on December 28, 2018, the Town responds that the Union did not establish the "bona fides of this test message, thus depriving it of any evidentiary value." It identifies the Supervisor's testimony that he did not send the message and observes that the text message states it was sent at 12:57 a.m. at a time when the Supervisor testified he would have been sleeping. The Town also claims that the document appears to be altered to add "Ron Staedt Cell," which does not appear to be in the same font and font size than the rest of the message.

The Town also asks the Arbitrator to take notice of a court Affidavit from Shields, sworn to July 15, 2019, in which he attaches a "*different version* of the text message that was submitted to the Arbitrator at the hearing." (Emphasis in original). The Town notes that, at the hearing, Mr. Shields testified that the exhibit introduced as Union Exhibit 4 was a text he received from the Supervisor on December 28, 2018 but, in his affidavit, "he swears that the different exhibit attached to his affidavit was a 'true copy' of the message that he received from Mr. Staedt." The testimony of Mr. Shields and any alleged text message from the Supervisor, the Town claims, must be considered "wholly unreliable and must be disregarded." Finally, the Town maintains that, if the Arbitrator were to grant the Grievant any damages, such damages have to be limited to the 11 day period between January 25, 2019 and February 5, 2019 when the Town eliminated Grievant's position.

## POSITION OF THE UNION

According to the Union, the central question before the Arbitrator should be if Grievant "worked within the unit defined in the Collective Bargaining Agreement, to wit, a full-time employee in the Civil Service title of Heavy Machine Equipment Operator"? The Union argues that the answer to this question is "yes," and "[w]hile employees are often directed to 'obey now grieve later' it is unheard of that, the obeying could be the basis for denying pay." The Union avers that Grievant performed the duties assigned to him by the Town of Alma Superintendent of Highways, and noting its contention that the Highway Superintendent acted in accordance with State law, the Union argues, "[b]ut even if the Union is wrong and Trask [Grievant] should not have followed the superintendent's direction, he should not be forced to forfeit a year's pay."

In setting forth its position, the Union claims that the Town Board lacked the authority to terminate Grievant. It argues that Grievant was hired by the Highway Superintendent and, under Article 9 of the Agreement, the Highway Superintendent has the authority to determine if a new employee's probationary term should be extended. This observation permits the Union to assert that, "if Superintendent Ford had the authority to hire Trask and extend his probation, Ford also had the authority to determine that Trask had successfully completed probation."

As to the Town's reliance on the term "Employer" as used in Section 7.01 of the Agreement and the 60-day probationary term, the Union asserts that the Town's position cannot withstand scrutiny. The Union maintains that the "powers of the Highway Superintendent are set by statute not the CBA" and, in addition, "the reference of the Town Board as the employer in the CBA does not affect the statutory authority of the superintendent of highways." The Union also claims that, to the extent the Town had authority to act, "that authority must be exercised collectively by the Town Board and not individually by the Supervisor." Moreover, the Union argues that Grievant's termination was arbitrary, capricious, and in bad faith.

The Union identifies Section 140 of the State Highway Law and claims that it provides the Highway Superintendent with the authority to direct the workforce within the Superintendent's Department. It also identifies judicial authority that it claims corroborates this observation. In the Union's estimation, the Town Board did not make any "effort to ratify the alleged discharge of Trask at its ... meeting on February 5, 2019," and, instead, "acted in executive session allegedly to eliminate his position because of pending budget cuts threatened in Cuomo's proposed budget." The "cuts," the Union claims, did not occur and the Town Highway budget was not adjusted. The Supervisor acknowledged as much at the arbitration hearing, according to the Union, and also acknowledged that, in 2019, there was sufficient funds in the Highway Fund to pay Grievant for the work he was performing. The Union identifies a 1969 decision of the State

Comptroller which it claims supports its position. The Union also cites judicial authority that it claims supports its position, especially its claim that, while the Town Board "must approve the budget of the Highway Department but once approved, the management of the Highway Department and the employment of employee[s] in that department is entirely vested in the Highway Superintendent."

The Union also claims that the Town did not prove that it exercised the authority it claims because it did not present any evidence that it exercised its claimed authority to terminate Grievant during his probationary period. The Union asserts that the Town exercises its authority by action of a 5-member Town Board and observes that the Town claims that the elimination of "the 3rd position in the highway department was approved in … executive session during the Town Board's January 15 meeting." The Union, however, maintains there is a falsification because the minutes reflect "no justification" for going into executive session and Mr. Warboys should not have been allowed to participate in the executive session and to vote because he was not sworn in as a Town Board member until February 5. The Union avers that it is "highly likely that the issue was not brought up in an executive session and that the town simply fabricated this assertion," particularly in view of the minutes of the regular meeting that did not reflect more than a "personnel issue was discussed and there was no resolution to it." Further, the resolution, the Union claims, reflects further falsification because it referred to a reduced budget from the State before the Governor issued the budget.

The Union also claims that the grievance was timely filed. According to the Union, on January 29, 2019 Grievant was informed that he had been terminated but the notice did not set forth any basis for the action. Moreover, the Union notes that the date mentioned in the termination – January 25, 2018 – set forth the wrong year. While the Town cites a January 25, 2019 letter in the notice, according to the Union, that notice or letter was never delivered to Grievant. Grievant, the Union further observes, filed an immediate response by setting forth his right to a hearing under the Civil Service Law as seen in his January 29, 2019 letter. The Union contends that this letter "satisfies the requirement for a written grievance," and Grievant, in fact, "pursued his grievance with the Highway Superintendent," who "continued to employ Trask and every two weeks certified that Trask had worked for the Highway Department and is entitled to payment." This permits the Union to conclude that Grievant "won his grievance, but the Town refused to implement the decision," but "simply stonewalled."

According to the Union, the Town has acknowledged that Grievant "was employed by the Highway Department and it was not until April [of 2019] that the Town informed him that he could not continue as a Highway Department employee," when it delivered to him an April 16, 2019 letter. The Town claims that the April 16, 2019 letter "was apparently sent in response to the grievance filed by the Union on March 29, 2019," on which the Highway Superintendent "restated step one answer on the grievance form." The Union argues that the Town "can hardly sustain a claim that a grievance filed two weeks before the

Town's final answer was untimely," and "[i]n any event, [the] timeliness claim was waived by the Town during the medication held on June 19, 2019." Thus, the Union observes that the report of the mediation activities accurately stated that the Town refused to mediate and did not object to the Union's statement that it would proceed to arbitration.

In addition, the Union argues that the Arbitrator "may not credit any action the Town Board [has] taken in bad faith." It asserts that the Town Board cannot act in a manner that is arbitrary, capricious, or discriminatory, and, in the instant case, Grievant "was denied a fair opportunity to prove himself during his probationary term." The Union puts forth that "bad faith" occurred by the Town Board, especially as seen in the "December 28, 2018 text message" from the Town Supervisor "to the other members of the Town Board," which "establishes a prima facie case that the treatment of Trask challenged in this arbitration was motivated by the desire to injure a political opponent." Once this showing has been made, according to the Union, the burden then shifted to the Town "to establish that a legitimate performance failure was the sole reason for the action."

As to two driving incidents referenced by the Town when it informed Grievant that he was terminated, the Union responds that the Town Board did not investigate the two incidents. As to the alleged basis for the abolition of Grievant's position, the Union underscores that "the State aid cuts proposed in the Governor's budget, never occurred" and, further, there was "no investigation

FILED: MONROE COUNTY CLERK 07/31/2020 01:16 PM
INDEX NO. E2020001926
NYSCEF DOC. NO. 29
Case 1:20-cv-01111-UNA   Document 1-7   Filed 08/19/20   Page 27 of 32
RECEIVED NYSCEF: 07/31/2020

18

of the effect of those proposed aid cuts or any relation to those cuts and the personnel costs with respect to the third position in the Highway Department."

The Union also claims that the Town "improperly locked Trask [Grievant] out in violation of the Collective Bargaining Agreement." As for a remedy, the Union claims that the Award must provide a remedy that is "effective." In setting forth its position, and incorporating its lock-out arguments, the Union argues that the Town should pay Grievant an additional day's pay for every day that he was locked out.

## OPINION

Because it goes to the heart of the Arbitrator's jurisdiction, he will treat first the threshold question of whether the grievance is substantively arbitrable. The Arbitrator notes that his jurisdiction is limited by the parties' Agreement — any topic about which the parties have not agreed to arbitrate is beyond the Arbitrator's jurisdiction. In Article 10, Section 10.2 of their Agreement, the parties define grievance as "any claimed violation, misapplication or misinterpretation of an expressed provision of this Agreement." In Section 10.11, the parties underscore the Arbitrator's lack of jurisdiction to consider matters outside their Agreement by stating that the Arbitrator has "no power of authority to add to, detract from or modify explicitly or impliedly, any expressed terms of this Agreement, and his authority shall be limited to deciding only whether a specific provision of this Agreement has been violated."

The Arbitrator notes that the grievance that was filed does not identify any specific provision of the parties' Agreement that was allegedly violated by the Town. It does, under "Nature of Complaint," state that there was an "unfair and unjust discharge" of the Grievant. The parties do have a just cause provision in Article 7, Section 7.03(b). The just cause requirement, however, does not apply to probationary employees. No interpretation of the Agreement is required to reach this conclusion given the clear language in Section 7.01: "at any time during such probationary period, such [probationary] employees may be dismissed or otherwise terminated by the Employer, which dismissal shall not be subject to the grievance and arbitration provisions of this Agreement." Further, the parties in the Preamble to their Agreement define "Employer" as the "Town of Alma."

Based on the foregoing observations, which set forth the only reasonable reading of the contract language, the Arbitrator finds that the parties have agreed that it is the Town, and not the Highway Superintendent, that has the authority to terminate an employee during the 60-day probationary period. If a probationary employee is terminated during the 60-calendar day period, the parties agree that the decision to terminate the employment is beyond the Arbitrator's jurisdiction. The language of Article 9 ("Probation Period") as set forth in Section 9.01 does not require a different understanding. There, the parties identify the "sixty (60) calendar days" that constitutes the probation period. They recognize that, "at the end of this period," the probationary employee "shall either be terminated or

become a permanent employee." This language can be paired with the language of Section 7.01, to reach the conclusion that it is the Town ("Employer") that is the body that can terminate an employee during the probationary period. Should the Town not terminate an employee by the end of the probationary period, the parties go on to state in Section 9.01 that the period "may be extended by mutual agreement between the Superintendent of Highway and the Union."

Accordingly, in the instant case, had the Town not terminated Grievant as a probationary employee, which is to say that Grievant would have made it to the end of the 60 calendar day probationary period, the Highway Superintendent would then have had the power, provided he had the Union's consent, to extend the probationary period. The Highway Superintendent's ability to extend the probationary period, based on the only reasonable reading of Section 9.01 available, comes into play only if the Town itself has not terminated the probationary employee during the probationary period. Section 9.01, or for that matter, any other part of the parties' Agreement, cannot be read as a grant of power to the Highway Superintendent's to determine that a probationary employee during the 60-calendar day probation period should not be terminated.

The Arbitrator finds, therefore, that the January 25, 2019 notice to Grievant informing him that his employment had been terminated under Section 7.01 of the parties' Agreement resulted in a termination that took place within the 60 calendar day probationary period and is conduct on the part of the Town that the parties have excluded from the grievance process and arbitral consideration. For

that reason, the Arbitrator is constrained to conclude that the grievance lacks substantive arbitrability.

In reaching the conclusion in the preceding paragraph, the Arbitrator has taken into account all arguments raised by the Union. Initially, he would note that the rationale set forth in support of the conclusion that the grievance lacks substantive arbitrability is not based on the Town's decision to abolish the Civil Service position that Grievant held. Further, the Arbitrator notes that the Union's contentions are largely predicated on an interpretation of the Highway Law. The Highway Law, however, is not part of the parties' Agreement. It may well be, the Arbitrator observes, that there are forums that would entertain a legal claim raised by the Union and/or Grievant that the abolition of the Civil Service position Grievant occupied violated the Civil Service Law or that the Highway Law was violated. Moreover, the Arbitrator observes that the Union's contention that Grievant was treated in a manner that was arbitrary, capricious, and discriminatory, also might be a claim that could be appropriately brought forth in other forums. The Arbitrator's conclusion on substantive arbitrability is based solely on the limitations on his jurisdiction as set forth in the parties' Agreement.

The Arbitrator would note, even if he found the grievance to be substantively arbitrable, the grievance was untimely filed. In Article 10, Section 10.09 ("Procedure"), the parties detail the steps in the grievance process. The first step is "Formal Presentation to Superintendent of Highways." Thus, the grievance is "initiated by written submission to the Superintendent of Highways in

the form of a signed statement." In Section 10.08, the parties agree that a grievance "will be deemed waived unless it is filed within seven (7) calendar days after the employee knew or should have known of the act or condition on which the grievance is based." The record shows that the grievance (Joint Exhibit 2) was not submitted to the Highway Superintendent at Step 1 until March 29, 2019. The grievance was filed, therefore, well beyond the seven-calendar day period. The January 29, 2019 letter or notice that Grievant provided the Alma Town Board protesting his termination cannot be considered a grievance given the fact that it was not a written submission to the Highway Superintendent as required at Step 1 of the grievance's process.

In view of the Arbitrator's arbitrability determinations, any assessment of the merits of the grievance would be beyond his jurisdiction.

Accordingly, and based on the foregoing, I find and make the following:

## AWARD

The instant grievance is not substantively arbitrable, nor was it timely filed,

in accordance with the provisions of the parties' Agreement.

The instant grievance is dismissed.

STATE OF NEW YORK )
COUNTY OF ALBANY   ) ss:

I, Jeffrey M. Selchick, do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this Instrument, which is my Award.

Dated: February 1, 2020
       Albany, New York

JEFFREY M. SELCHICK, ESQ.
ARBITRATOR